Estella PAGE, et al., Plaintiffs,

v.

PENSION BENEFIT GUARANTY
CORPORATION, Defendant.

Civ. A. No. 89–2997–AER.

United States District Court,
District of Columbia.

March 28, 1990.

Ann Curry Thompson, Kelman, Loria, Downing, Simpson & Schneider, Detroit, Mich., Stephen R. Bruce, Washington, D.C., for plaintiffs.

Israel Goldowitz, Peter Gould, Office of the General Counsel, Pension Ben. Guar. Corp., Washington, D.C., for defendant.

### MEMORANDUM

AUBREY E. ROBINSON, Jr., Chief Judge.

Now before the Court is plaintiff Page's motion for leave to amend her complaint. Presently, plaintiff's action challenges the Pension Benefit Guarantee Corporation's ("PBGC's") failure to guarantee and pay benefits to her and other members of her pension plan, the Federal's Inc. Teamsters Retirement Income Plan ("the Federal's Plan") which terminated in 1980. The amendment to the complaint Page seeks would expand her suit to cover a proposed nationwide class of indeterminate size. The putative class would include all persons whose benefits had not vested under the terms of a retirement plan in violation of ERISA's strict vesting requirements, and for whom PBGC nevertheless has refused to guarantee benefit payments.

The motion is governed by Federal Rule 15; needless to say, Page also seeks the benefit of the Rule's provision for retroactivity of amendments to pleadings.[1] If permitted, the amendment would therefore toll the statute of limitations for the nationwide class as of the date of her original complaint, March 24, 1986, pending class certification.[2] The class, if certified, could then include members whose claims might otherwise have become stale between the date plaintiff brought suit and the present.

Although the Rule, as phrased, deals only with amendments to add defendants,

its requirements are relevant by analogy to amendments to add plaintiffs. *See* Advisory Committee Note to Rule 15(c); *Allied Intern. v. International Longshoremen's Ass'n*, 814 F.2d 32, 35 (1st Cir.1987), *cert. denied*, 484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 41 (1987); *Leachman v. Beech Aircraft Corp.*, 694 F.2d 1301, 1308 (D.C. Cir.1982); *Raynor Bros. v. Amer. Cyanimid Co.*, 695 F.2d 382, 384 (9th Cir.1982). Thus, in order for an amendment adding a party plaintiff to relate back under Rule 15(c) to the date of the original complaint, the amended complaint must state a claim which arises from the same conduct, transaction or occurrence set forth in the original pleading.

■ In addition, the defendant must have had, within the applicable limitations period, adequate notice of the new plaintiffs, and that the original suit in effect asserted their claims as well. "In deciding whether an amendment relates back to the original claim, notice to the opposing party of the existence and involvement of the new plaintiff is the critical element." *Avila v. Immigration and Nat. Serv*, 731 F.2d 616, 620 (9th Cir.1984).

A. *Same Conduct, Transaction or Occurrence*

■ First, then, is the question whether the amended complaint here arises from the same conduct or transaction as did the first complaint. The Court finds that it does. Page's 1986 complaint makes allegations that PBGC has:

"offered no explanation to plaintiff why her benefits and those of the class should not be guaranteed as required by

---

**1.** That Rule provides as follows:
(c) Relation Back of Amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment that party (1) has received such notice of the institution of the action that the party will not be preju-

diced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party. Fed.R.Civ.Pro. 15(c).

**2.** *See American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553, 94 S.Ct. 756, 766, 38 L.Ed.2d 713 (1974). Thus, plaintiff's statement that "granting this amendment will remove any possible statute of limitations defense that could be raised against other member so the class" is not entirely accurate.

ERISA, and has refused to pay such benefits to plaintiff and other members of the class." ¶ 12.

"unlawfully and arbitrarily refused to act to guarantee plaintiff's pension benefits and those of other individuals similarly situated." ¶ 16

"failed to carry out its statutory duty to insure continued and prompt payment of pension benefits to participants of terminated plans covered by ERISA." ¶ 18.

"depriv[ed plaintiff's] of pension benefits ... in contravention of the intent of ERISA and the statutory requirements imposed by ERISA on defendant PBGC" ¶ 20.

The essence of the 1986 complaint is the refusal/failure by PBGC to guarantee benefits of Page and other members of her pension plan. Although Page may not have known it for certain at the time, her claim arose to some extent out of PBGC's policy not to guarantee unvested benefits, even if they were unvested because of arguably illegal plan vesting requirements. This "conduct" also forms the basis for nationwide class claims, which allege, *inter alia,* that PBGC's "interpretation of its obligations to guarantee nonforfeitable benefits under ERISA, which excludes benefits that are nonforfeitable by operation of federal law, is an unlawful interpretation" of certain ERISA provisions. First Amended Complaint ¶ 31.

Federal Rule 15(c) requires that the "conduct" or "transaction" giving rise to the amended complaint be "set forth *or attempted to be set forth* in the original pleading." PBGC believes that Page fails this requirement because she did not specifically mention a "policy" or refer to specific ERISA provisions. Her discussion of PBGC's statutory obligations generally, however, constitutes an adequate "attempt" to "set forth" a claim that PBGC unlawfully interpreted ERISA so as to wrongfully deny benefits on a large scale. This is especially reasonable considering that Page also alleges a refusal of PBGC to advise her of the reasons for its actions.

**B.** *Notice to PBGC of the Nationwide Class' Claims*

As stated above, notice to a defendant of the claims of additional plaintiffs must have two basic components in order to permit relation back: notice of the existence of their claims *and* of the involvement of the new plaintiffs in the original action. *See Leachman,* 694 F.2d at 1309 ("the touchstone ... is whether the defendant knew or should have know of the existence and involvement of the new plaintiff"); *Williams v. United States,* 405 F.2d 234, 238 (5th Cir.1968) ("Not only must the adversary party have had notice about operational facts, but it must have had fair notice that a legal claim existed in and was in effect being asserted by, the party belatedly brought in"); *LeMasters v. K–Mart, Inc.,* 712 F.Supp. 518, 520 (E.D.La.1989) (knowledge of potential cause of action inadequate; plaintiff to be added must be involved in litigation).

One way of accomplishing notice is informal. Often the original complaint on its face reveals the existence of additional claimants, and possibly in combination with some conduct by plaintiffs or the defendant, justifies an inference that the new claimants were in fact "involved" in the action. *Andujar v. Rogowski,* 113 F.R.D. 151, 159 (S.D.N.Y.1986) (language in complaint referring to new plaintiffs plus settlement negotiations including additional plaintiffs); *Nielsen v. Professional Financial Mgt., Ltd.,* 682 F.Supp. 429, 437 (D.Minn.1987) (language in complaint referring to new plaintiffs plus defendant's contacting insurer regarding their claims); *Soler v. G & U Inc.,* 103 F.R.D. 69, 74–75 (S.D.N.Y.1984) (language in complaint referring to new plaintiffs in addition to filing of consent to sue forms by new plaintiffs).

Sometimes the relationship between the original and new plaintiffs forms an "identity of interest" adequate to support a finding of notice. *See Williams,* 405 F.2d at 238 (mother and child); *Staren v. American Nat'l Bank & Trust Co.,* 529 F.2d 1257, 1263 (7th Cir.1976) (controlling shareholder and corporation); 6A C. Wright & A.

Miller, *Federal Practice and Procedure* § 1501 (1990). Again, "the point of the courts' consideration of identity of interest is that that factor ensures that the old and the new plaintiff was in effect 'involved in [the proceeding] unofficially from an early stage.'" *Leachman,* 694 F.2d at 1309 (quoting 3 J. Moore, *Moore's Federal Practice* ¶ 15.15[4.-1], at 15–220 (1982)).

Applying these principles to the litigation at hand, it is apparent to the Court that Page's March 1986 complaint does not constitute informal notice to PBGC of the existence and involvement of a nationwide class. There is not the kind of relationship between Page and the nationwide class members which warrants finding "identity of interest" between them. *See Nielsen,* 682 F.Supp. at 436 (relationship between individual investors in tax shelters not "identity of interest").[3]

■ Also, in spite of Page's efforts to characterize the complaint as an obvious omnibus challenge on behalf of every allegedly wronged pensioner, by its terms the complaint referred to the Federal's Plan and nothing more. The Court rejects the idea, advanced by plaintiff, that a declaratory judgment action by a limited group necessarily puts a defendant on notice that it may be engaged in litigation with nationwide implications. Such a principle would effectively nullify the statute of limitations and its assurance of some repose to a defendant. Page's argument is really another way of saying that where a new plaintiff's claims arise from the same transaction or occurrence, and nothing more, relation back should obtain. Our Circuit Court

has flatly rejected such a construction of Rule 15. *See Leachman,* 694 F.2d at 1309.

■ But the failure of the complaint, through identity of interest or otherwise, to effect notice does not end the inquiry. *See Andujar,* 113 F.R.D. at 156 (actual notice outside institution of original suit may satisfy Rule 15(c)). This Court finds that once PBGC recognized Page as the proper representative of unamended plan participants nationwide, it clearly had actual notice of additional claimants and their participation in this litigation. This recognition occurred some time in mid–1987, following the discovery by Page on May 28, 1987 of PBGC's statutory justification for its actions, and the commencement of settlement negotiations on a nationwide class basis sometime thereafter, *see* Plaintiff's Mot. for Leave to Amend, Nov. 24, 1989, at 3. The parties entered into a stipulation on July 1, 1987 staying all proceedings pending settlement discussions. For lack of a more concrete date, the Court considers this stipulation the best indication of PBGC's recognition of the wider class' participation in the litigation.[4]

The effect of the date of notice on plaintiff's motion to amend is as follows. She seeks to add an indeterminate number of plaintiffs—a nationwide class. Naturally, the scope of the putative class is defined in part by the statute of limitations, which will set the backward cut-off date for membership. As the Court noted at the outset, Rule 15 expressly provides that notice must come "within the period provided by law for commencing the action." *See general-*

---

**3.** The courts have required the "identity of interest" relationship to be such that suit by one claimant effectively asserts the claims of the other. *See Raynor,* 695 F.2d at 384 (substituting partnership, major shareholder in original plaintiff corporation); *Williams,* 405 F.2d at 239 (addition of mother to suit by son); *Flextron Sys., Inc. v. Technic, Inc.,* 1987 WL 20047 1987 U.S.Dist. LEXIS 10667 (E.D.Pa.1987) (permitting addition of building owners to original plaintiff, building tenant); *Levin v. Weissman,* 594 F.Supp. 322 (E.D.Pa.1984) (permitting addition of wife to suit by husband), *aff'd,* 760 F.2d 263 (3d Cir.1985). In no sense can Page meet this standard. She has no connection with nationwide claimants other than coverage by the

same federal statute, which is simply an inadequate basis from which to infer notice.

**4.** Page implicitly suggests that PBGC recognized the involvement of the nationwide class when it moved to amend the class definition in parallel litigation, *Rettig v. Pension Benefit Guarantee Corp,* Civ. No. 82–0517, 1987 WL 15502 (D.D.C.). *See* Plaintiff's Reply, Mar. 16, 1990, at 8. Page points to a phrase in the parties' joint memorandum in support of the amendment, that her suit could "adequately ... protec[ ]" the "interests of unamended pension plan participants." A closer examination, however, reveals that this is a statement *by the class representatives* in *Rettig,* and not any admission by PBGC.

ly *Schiavone v. Fortune,* 477 U.S. 21, 29, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1986) ("lynchpin" of Rule 15 is notice, "and notice within the limitations period").

Plaintiff's complaint, as amended, will therefore encompass members of the class defined therein for whom the statute of limitations had not yet run as of the date of notice, July 1, 1987. The Court is cognizant that the parties dispute the statute of limitations applicable to this action. Nevertheless, for purposes of this motion, it is clear that plaintiff may add only those additional claimants who meet the requirements of Rule 15, i.e., those for whom PBGC had notice within the limitations period. Thus, although the addition of class allegations shall be retroactive to the date of the original complaint, March 24, 1986, those allegations may only cover individuals whose claim arose *after* the backward cutoff date. That date is calculated by moving from July 1, 1987 backward the amount of the applicable statute of limitations period. This in effect renders plaintiff's amendment retroactive only to July 1, 1987.

An appropriate Order accompanies this Memorandum.

### ORDER

Upon consideration of Plaintiffs' Motion to Amend Complaint, Defendant's Opposition thereto, and in accordance with the Memorandum entered this date, it is by the Court this 28th day of March, 1990,

ORDERED, that Plaintiffs' Motion be and hereby is GRANTED; and it is

FURTHER ORDERED, that Plaintiffs' First Amended Complaint shall be accepted for filing, and shall be deemed effective retroactive to July 1, 1987 for the putative class alleged to exist therein, other than the members of the Federal's Inc. Teamsters Retirement Income Plan, for whom the effective date of the complaint shall remain March 24, 1986.